UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. 19-1115** |
| ) | |
| **PUNCH IT PERFORMANCE AND TUNING** ) | |
| **LLC, D N S ENTERPRISES OF FLORIDA,** ) | |
| **INC., REI RESEARCH GROUP, INC.,** ) | |
| **MICHAEL PAUL SCHIMMACK, VANESSA** ) | |
| **SCHIMMACK, and** ) | |
| **LORI BROWN,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

The United States of America ("United States"), by authority of the Attorney

General of the United States and at the request of the Administrator of the United States

Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action brought by the United States against Defendants:

Punch It Performance and Tuning LLC, D N S Enterprises of Florida, Inc., and REI

Research Group, Inc. (collectively, the "Punch It Entities"); Michael Paul Schimmack;

Vanessa Schimmack; and Lori Brown for five separate claims for relief. The first three

claims seek civil penalties and injunctive relief for numerous violations of Section 203 of

the Clean Air Act ("CAA"), 42 U.S.C. § 7524, related to the Punch It Entities' and Mr.

Schimmack's manufacture and sale of aftermarket products for motor vehicles or motor

vehicle engines. The fourth and fifth claims seek recovery, under the Federal Debt

Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3301 *et seq.*, of the value of assets

fraudulently transferred to Michael Schimmack, Vanessa Schimmack, and Lori Brown.

## I.    JURISDICTION

2.     This Court has jurisdiction over the subject matter of and the parties to this

action pursuant to 42 U.S.C. §§ 7523 and 7524, and 28 U.S.C. §§ 1331, 1345, and 1355.

3.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C.

§§ 1391(b)(2), 1391(c)(2) and 1395(a), as well as 42 U.S.C. § 7524, because it is the

judicial district in which the Defendants are located, reside, are doing business, and/or in

which a substantial part of the alleged violations in the Complaint occurred.

## II.    DEFENDANTS

4.     Each Defendant is a "person" within the meaning of Section 302(e) of the

CAA, 42 U.S.C. § 7602(e).

### *Punch It Performance and Tuning LLC*

5.     Defendant Punch It Performance and Tuning LLC (hereinafter, "PIP

Tuning") was registered as a limited liability company in Florida in September 2011.

6.     PIP Tuning manufactured and sold aftermarket automotive hardware and

software products for certified motor vehicles between 2011 and at least August 4, 2015.

7.     PIP Tuning was administratively dissolved on September 25, 2015.

2

8.     The registered address for PIP Tuning was Defendant Michael Schimmack's home address in Deltona, Florida.

9.     Defendant Michael Schimmack was the President of, a principal of, and sole director of PIP Tuning at all times relevant to this complaint.

### D N S Enterprises of Florida, Inc.

10.     Defendant D N S Enterprises of Florida, Inc. (hereinafter, "DNS") was registered as a corporation in Florida on May 5, 2014.

11.     DNS manufactured and sold aftermarket automotive hardware and software products for certified motor vehicles from at least August 5, 2015 though at least October 25, 2016 using the "Punch It" brand name.

12.     DNS was administratively dissolved on September 22, 2017.

13.     The registered address for DNS was Defendant Michael Schimmack's home address in Deltona, Florida.

14.     Defendant Michael Schimmack was the President of, a principal of, and sole director of DNS at all times relevant to this complaint.

15.     In a letter to EPA on February 23, 2017, counsel for DNS characterized Defendant Michael Schimmack as a "sole proprietor."

16.     DNS is a Punch It Entity controlled by Defendant Michael Schimmack.

### REI Research Group, Inc.

17.     Defendant REI Research Group, Inc. (hereinafter, "REI") was registered as a corporation in Virginia on November 4, 2016.

18.     REI manufactured and sold the same aftermarket automotive software

products for certified motor vehicles as DNS.

19.     Michael Schimmack closed REI in early 2017.

20.     Articles of corporate termination were filed on March 10, 2017.

21.     REI has a status of "terminated" in Virginia's State Corporation
Commission files.

22.     The two principals on record for REI, Lori Brown and Vanessa
Schimmack, are related to Defendant Michael Schimmack.

23.     Lori Brown is Michael Schimmack's sister.

24.     Vanessa Schimmack is Michael Schimmack's wife.

25.     Defendant Michael Schimmack continued to manufacture and sell the
same or similar products that were sold by DNS under REI's name.

### *Michael Paul Schimmack*

26.     Defendant Michael Paul Schimmack (hereinafter, "Mr. Schimmack") is an
individual who has been working in the automotive aftermarket parts industry since at
least 2003, as described in Paragraph 93 – 102.

27.     At all times relevant to this complaint, Mr. Schimmack had ultimate
decision-making authority and was directly involved in the operations of PIP Tuning.

28.     At all times relevant to this complaint, Mr. Schimmack had ultimate
decision-making authority and was directly involved in the operations of DNS.

29.     At all times relevant to this complaint, Mr. Schimmack had ultimate
decision-making authority and was directly involved in the operations of REI.

30.     At all times relevant to this complaint, Mr. Schimmack designed,

manufactured, and sold products that are the subject of this complaint.

### Vanessa Schimmack

31.     Defendant Vanessa Schimmack (hereinafter, "Mrs. Schimmack") is an individual.

32.     Mrs. Schimmack is married to Mr. Schimmack.

33.     At all times relevant to this complaint, Mrs. Schimmack was an employee of DNS.

34.     At all times relevant to this complaint, Mrs. Schimmack was a principal and director of REI.

### Lori Brown

35.     Defendant Lori Brown (hereinafter, "Ms. Brown") is an individual.

36.     Ms. Brown is the sister of Mr. Schimmack.

37.     At all times relevant to this complaint, Ms. Brown was a principal, president, or director of REI.

38.     Ms. Brown had no experience in the automotive software industry.

39.     Ms. Brown had no role in the operations of REI's business.

### III.      BACKGROUND

#### A.  The Statutory and Regulatory Objectives of the CAA

40.     This action arises under Title II of the CAA, as amended, 42 U.S.C. §§ 7521–7590, and the regulations thereunder relating to the control of emissions of air pollution from motor vehicles and motor vehicle engines.

41.     In creating the CAA, Congress found that "the increasing use of motor

vehicles . . . has resulted in mounting dangers to the public health and welfare."
42 U.S.C. § 7401(a)(2). Congress's purposes in creating the Act were "to protect and
enhance the quality of the Nation's air resources so as to promote the public health and
welfare and the productive capacity of its population," and "to initiate and accelerate a
national research and development program to achieve the prevention and control of air
pollution." 42 U.S.C. § 7401(b)(1)–(2).

  42. "Motor vehicle" is defined as "any self-propelled vehicle designed for
transporting persons or property on a street or highway." 42 U.S.C. § 7550(2); 40 C.F.R.
§ 85.1703.

  43. Title II of the CAA and the regulations promulgated thereunder establish
stringent standards for the emissions of air pollutants from motor vehicles and motor
vehicle engines that "cause, or contribute to, air pollution which may reasonably be
anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a). These pollutants
include, but are not limited to particulate matter ("PM"), nitrogen oxides ("$NO_x$"), non-
methane hydrocarbons ("NMHCs"), and carbon monoxide ("CO"). 42 U.S.C.
§ 7521(a)(3)(A).

  44. EPA has also established National Ambient Air Quality Standards for
certain pollutants, including ozone, $NO_x$, PM, and CO. *See* 40 C.F.R. §§ 50.1–50.19.

  45. PM is a form of air pollution composed of microscopic solids and liquids
suspended in air. PM is emitted directly from motor vehicles and is also formed in the
atmosphere from the emission of other pollutants, including from motor vehicles.

  46. Ozone is a highly reactive gas that is formed in the atmosphere from

emissions of other pollutants, including from motor vehicles.

47. $NO_x$ and NMHCs are reactive gasses that contribute to the formation of PM and Ozone.

48. Exposure to PM and Ozone is linked to respiratory and cardiovascular health effects as well as premature death. Children, older adults, people who are active outdoors (including outdoor workers), and people with heart or lung disease are particularly at risk for health effects related to PM or Ozone exposure.

49. CO is a highly toxic gas that can cause headaches, dizziness, vomiting, nausea, loss of consciousness, and death. Long-term exposure to CO has been associated with an increased risk of heart disease.

**B. Acts Prohibited by the Clean Air Act, 42 U.S.C. § 7522(a)(3)(B)**

50. Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), makes it a prohibited act for "any person to manufacture or sell, or offer to sell, or install any part or component intended for use with, or as a part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use."

51. Persons violating Section 203(a)(3)(B) of the Act, 42 U.S.C. § 7522(a)(3)(B), are subject to injunctive relief pursuant to 42 U.S.C. § 7523.

52. Persons violating Section 203(a)(3)(B) of the Act, 42 U.S.C.

§ 7522(a)(3)(B), are subject to civil penalties of up to $3,750 for each violation occurring

on or after January 13, 2009, through November 2, 2015, and up to $4,735 for each

violation occurring after November 2, 2015, and assessed on or after February 6, 2019, in

accordance with Sections 204(a) and 205(a) of the CAA, 42 U.S.C. §§ 7523(a) and

7524(a). 40 C.F.R. § 19.4 (2019).

53.     Pursuant to 42 U.S.C. § 7524(a), each part or component manufactured,

sold, offered for sale, or installed in violation of the Section 203(a)(3)(B) of the Act,

42 U.S.C. § 7522(a)(3)(B), is a separate violation.

### C.  EPA's Certificate of Conformity Program
### for New Motor Vehicles and Motor Vehicle Engines

54.     Manufacturers of new motor vehicles or motor vehicle engines must apply

for and obtain a certificate of conformity ("COC") from EPA to sell, offer to sell, or

introduce or deliver for introduction into commerce any new motor vehicle or motor

vehicle engine in the United States. 42 U.S.C. § 7522(a)(1).

55.     To obtain a COC, the original equipment manufacturer ("OEM") must

demonstrate that the motor vehicle or motor vehicle engine will conform to established

emissions standards for PM, NOx, NMHC, CO, and other pollutants during a motor

vehicle or motor vehicle engine's useful life. 42 U.S.C. § 7525(a)(2); *see* 40 C.F.R.

§§ 86.007-30(a)(1)(i), 86.1848-01(a)(1).

56.     The COC application must describe, among other things, the emission-

related elements of design of the motor vehicle or motor vehicle engine. *See* 40 C.F.R.

§ 86.094-21(b)(1) ("The application . . . shall include the following: . . . a description of

[the vehicle's] . . . emission control system and fuel system components."); *see also*

40 C.F.R. § 86.1844-01(d)–(e).

57.     Once issued by EPA, a COC only covers those new motor vehicles or motor vehicle engines that conform in all material respects to the specifications provided to EPA in the COC application for such vehicles or engines. 40 C.F.R. § 86.1848-01(c)(6).

### D.  Emission-Related Elements of Design in Motor Vehicles and Motor Vehicle Engines

58.     An "element of design" is "any control system (i.e., computer software, electronic control system, emission control system, computer logic), and/or control system calibrations, and/or the results of systems interactions, and/or hardware items on a motor vehicle or motor vehicle engine." 40 C.F.R. § 86.1803-01.

59.     OEMs install a variety of hardware and software elements of design in motor vehicles and motor vehicle engines that control emissions of pollutants in order to comply with the CAA and obtain certification, hereinafter referred to as "Emission-Related Elements of Design."

60.     Pursuant to 42 U.S.C. § 7521(m), the OEM is required to install an Onboard Diagnostics ("OBD") System on motor vehicles that must monitor, detect, and record malfunctions of all monitored Emission-Related Elements of Design. 40 C.F.R. §§ 86.007-17, 86.010-18, 86.1806-05.

61.     The OBD System monitors and detects malfunctions of Emission-Related Elements of Design through a network of sensors installed throughout the motor vehicle and motor vehicle engine.

62.     When the OBD System detects a malfunction of an Emission-Related

Element of Design, it must illuminate the vehicle's Malfunction Indicator Light ("MIL")

on the dashboard. *See* 40 C.F.R. § 86.1806-05(b)–(d).

63.     The OBD System is an Emission-Related Element of Design.

64.     Exhaust Gas Recirculation ("EGR") Systems are Emission-Related

Elements of Design that reduce $NO_x$ emissions by recirculating exhaust gas through the

engine, thereby reducing engine temperature and $NO_x$ emissions.

65.      "Aftertreatment" refers collectively to the Emission-Related Elements of

Design "mounted downstream of the exhaust valve . . . whose design function is to

reduce emissions in the engine exhaust before it is exhausted to the environment." *See* 40

C.F.R. § 1068.30. Diesel Particulate Filters ("DPFs"), Diesel Oxidation Catalysts

("DOCs"), Selective Catalytic Reduction ("SCR") Systems, and $NO_x$ Adsorption

Catalysts ("NACs") are all part of Aftertreatment.

66.     Aftertreatment Emission-Related Elements of Design are contained in

OEM-installed, stock exhaust pipes.

67.     DPFs are Emission-Related Elements of Design that reduce the level of

PM pollution contained in engine exhaust gas.

68.     DOCs are Emission-Related Elements of Design that reduce CO and

NMHC emissions by promoting the conversion of those pollutants into less harmful

gases.

69.     SCR Systems are Emission-Related Elements of Design that reduce $NO_x$

emissions by chemically converting exhaust gas that contains $NO_x$ into nitrogen and

water through the injection of diesel exhaust fluid.

70.     NACs are Emission-Related Elements of Design that reduce $NO_x$ emissions by chemically adsorbing $NO_x$ from exhaust gas.

71.     OEMs set software parameters, also known as calibrations, that control, among other things, engine combustion and Aftertreatment performance (hereinafter referred to as "Certified Stock Calibrations"). 40 C.F.R. §§ 86.1803-01.

72.     OEMs disclose Certified Stock Calibrations on their application for a COC for each vehicle model because they are part of a motor vehicle's overall emissions control strategy. Certified Stock Calibrations that must be included on the COC application include "fuel pump flow rate, . . . fuel pressure, . . . EGR exhaust gas flow rate, . . . and basic engine timing." 40 C.F.R. § 86.1844(e)(2); *see also* 40 C.F.R. pt. 85 app. VIII (listing vehicle and engine parameters and specifications); 40 C.F.R. pt. 86 app. VI (listing vehicle and engine components). Certified Stock Calibrations are Emission-Related Elements of Design.

73.     Oxygen Sensors are Emission-Related Elements of Design that detect the ratio of air to fuel during fuel combustion. An imbalanced air-to-fuel ratio can result in increases in $NO_x$ or NMHCs.

74.     Motor vehicles are equipped with Electronic Control Units ("ECUs"), which are computers that monitor and control vehicle operations, including the operation of Emission-Related Elements of Design described in Paragraphs 60–72. OBD Systems and other Emission-Related Elements of Design operate in conjunction with ECUs.

75.     The Emission-Related Elements of Design described in Paragraphs 60–73 are installed in motor vehicles or motor vehicle engines in compliance with Title II of the

CAA and the regulations thereunder. *See, e.g.*, 42 U.S.C. § 7521 (setting emission and OBD standards and directing EPA to establish standards by regulation); 40 C.F.R. § 86.007-11 (establishing emission standards for 2007 and later diesel heavy-duty engines and vehicles); 40 C.F.R. § 86.1844-01(d)–(e) (listing information requirements for COC applications, including calibration information), 40 C.F.R. § 86.004-25(a)(6) (defining "critical emissions-related components").

### E. The Types of Aftermarket Products at Issue

76.    Mr. Schimmack and the Punch It Entities have developed products that are designed to alter a vehicle's power or fuel economy, or reduce the costs related to maintaining a vehicle's Emission-Related Elements of Design (hereinafter "Aftermarket Performance Products").

77.    Aftermarket Performance Products enhance a vehicle's power or fuel economy by altering, replacing, or disabling OEM-installed elements of design, including Emission-Related Elements of Design.

### *Hardware Products*

78.    Some Aftermarket Performance Products are hardware products that physically interfere with or replace Emission-Related Elements of Design (hereinafter, "Hardware Products").

79.    Some Hardware Products interfere with exhaust recirculation in the EGR System (e.g., "blocker plates" or "block off plates"). These Hardware Products are hereinafter referred to as "Subject EGR Delete Hardware Products."

80.    Some Hardware Products replace all or part of the Aftertreatment system,

allowing the physical removal of the DOCs, DPFs, NACs, OBD Sensors, and/or SCR System (e.g., "straight pipes," "race pipes," or "test tubes"). These Hardware Products are hereinafter referred to as "Subject Aftertreatment Delete Hardware Products."

### *Tunes*

81.     Some Aftermarket Performance Products are electronic software products (hereinafter, "Tunes") that alter or overwrite aspects of a motor vehicle's ECU and/or OBD System.

82.     Tunes can be stored and transmitted in numerous ways, including electronically though email and through electronic storage devices (hereinafter, "Tuners").

83.     Some Tunes manipulate the ECU and/or OBD System to bypass, defeat, or render inoperative Emission-Related Elements of Design, including Certified Stock Calibrations, EGR System, DPFs, DOCs, SCR System, and/or other Aftertreatment. These Tunes are hereinafter referred to as "Subject Tunes."

84.     Some Subject Tunes electronically disable or allow for the full physical removal of Emission-Related Elements of Design. These Tunes are hereinafter referred to as "Delete Tunes."

85.     Some Delete Tunes work in conjunction with Hardware Products by manipulating the monitoring function of the OBD System so that it will fail to detect the new Hardware Products and the removal of a vehicle's Emission-Related Elements of Design.

### F.   The Statutory Authority of the FDCPA

86.     Under the FDCPA, "a transfer . . . by a debtor is fraudulent as to a debt to the United States which arises before the transfer is made . . . if" **(1)** the debtor makes the transfer "without receiving a reasonably equivalent value in exchange for the transfer" and **(2)** the debtor is insolvent at the time of the transfer or becomes insolvent as a result of the transfer. 28 U.S.C. § 3304(a) (bolded numbers added for clarity).

87.     Under the FDCPA, "a transfer made . . . by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made . . . **[1]** if the debtor makes the transfer . . . with actual intent to hinder, delay, or defraud a creditor," or **(2)** if the debtor **(a)** does not receive reasonably equivalent value in exchange for the transfer and **(b)** "believed or reasonably should have believed that [the debtor] would incur [] debts beyond [its] ability to pay as they became due." 28 U.S.C. § 3304(b) (bolded numbers and letters added for clarity).

88.     The FDCPA lists factors—known as the *badges of fraud*—that may be considered in determining actual intent to defraud a creditor. 28 U.S.C. § 3304(b)(2).

89.      The badges of fraud include, but are not limited to: whether the transfer was to an insider, whether the debtor retained possession after the transfer, whether the transfer occurred after the debtor had been sued or threatened with suit, whether the transfer was of all or substantially all of the debtor's assets, whether the value of consideration received for the transferred asset was reasonably equivalent to the value of the transferred asset, whether the debtor was insolvent or became insolvent shortly after the transfer was made, and whether the transfer occurred shortly before or shortly after a

substantial debt was incurred. 28 U.S.C. § 3304(b)(2).

90.     The FDCPA defines "insider" as including: a director of the debtor; an officer of the debtor; and a relative of a director, officer, or person in control of the debtor. 28 U.S.C. § 3301(5)(B).

91.     The FDCPA provides the United States with several remedies for a fraudulent transfer: "(1) avoidance of the transfer . . . to the extent necessary to satisfy the debt to the United States; (2) a remedy [under the FDCPA] against the asset transferred or other property of the transferee; or (3) any other relief the circumstances may require." 28 U.S.C. § 3306(a).

92.     The FDCPA provides "judgment may be entered against the first transferee of the asset or the person for whose benefit the transfer was made" or "any subsequent transferee, other than a good faith transferee who took for value or any subsequent transferee of such good-faith [sic] transferee." 28 U.S.C. § 3307(b)(1).

## IV.     GENERAL ALLEGATIONS

### *Mr. Schimmack's Experience in the Tuning Industry*

93.     In 2003, Mr. Schimmack began work as a manager with an entity known as SCT, a vehicle Tune manufacturer at that time.

94.     In 2006, Mr. Schimmack began work as a "calibrator" for an entity known as Superchips, another vehicle tuning company.

95.     In 2011, Superchips merged with an entity known as Edge Products (hereinafter, "Edge").

96.     Mr. Schimmack was an employee of Edge until at least 2014.

15

97.     On January 17, 2013, Edge entered into a consent decree with the United

States (hereinafter, "Edge CD") for the sale of more than 9,000 aftermarket products in

violation of the CAA. *United States v. Edge Products*, L.L.C., 1:13-cv-00010-TS, ECF

No. 8 (Apr. 23, 2013 D. Utah).

98.     These products "enable[d] the modification of: the vehicle's engine

control parameters, some of which are elements of design that the original vehicle

manufacturers have used as part of the overall emissions control strategy for the vehicle

model; and the vehicle's [OBD] system." *United States v. Edge Products*, L.L.C., 1:13-

cv-00010-TS, ECF No. 2 (Apr. 23, 2013 D. Utah).

99.     The Edge CD injunctive relief prohibited Edge from manufacturing or

selling these products and mandated that "Edge . . . require each officer, director, and

employee to sign and return [an acknowledgement] that the officer, director, or employee

has received and reviewed this Consent Decree . . . ." *United States v. Edge Products*,

L.L.C., 1:13-cv-00010-TS, ECF No. 2 (Apr. 23, 2013 D. Utah).

100.    As an employee of Edge at the time the CD was entered, Mr. Schimmack

received and reviewed the Consent Decree.

101.    Mr. Schimmack signed the acknowledgment that he received and

reviewed the Consent Decree.

102.    Mr. Schimmack first registered his own corporate entity using the "Punch

It" brand in January 2010.

### *EPA's First Inspection*

103.    In July 2015, EPA received an anonymous tip that an entity known as

"Punch It" was manufacturing, selling, and installing devices that defeat Emission-Related Elements of Design.

104.    On August 4, 2015, EPA investigators conducted an inspection of a facility located at the home residence of Mr. Schimmack in Deltona, Florida.

105.    As alleged in Paragraphs 8 and 13, Mr. Schimmack's home residence was the registered address of both PIP Tuning and DNS.

106.    On August 4, 2015, two Punch It Entities were registered and had an active status: PIP Tuning and DNS.

107.    EPA investigators questioned Mr. Schimmack about his business, but neither party named a specific corporate entity. Instead, over the course of the inspection the parties discussed "Punch It."

108.    Mr. Schimmack told EPA investigators that "Punch It" sells aftermarket parts, including Subject EGR Delete Hardware Products, Subject Aftertreatment Delete Hardware Products, and Subject Tunes for both gasoline and diesel engines.

109.    Mr. Schimmack told EPA investigators that the Subject EGR Delete Hardware Products were capable of deleting EGR on certain diesel engines when accompanied with the correct Subject Tune.

110.    Mr. Schimmack told EPA investigators that "Punch It" manufactures custom Tunes for both gasoline and diesel engines.

111.    Mr. Schimmack told EPA investigators that many of the Tunes manufactured by "Punch It" were designed for Ford motor vehicles and motor vehicle engines, including Ford F-150 Ecoboost engines, Ford F series Powerstroke diesel

engines, and Ford Mustangs.

112.    Mr. Schimmack told EPA investigators that "Punch It" used software to create Tunes that are capable of manipulating almost all Certified Stock Calibrations for Ford engines.

113.    Mr. Schimmack told EPA investigators that "Punch It" loaded some Tunes onto Punch It branded Tuners which were then sold to customers.

114.    Mr. Schimmack told EPA investigators that "Punch It" loaded some Tunes onto Tuners manufactured by and branded as a third-party entity.

115.    Mr. Schimmack told EPA investigators that "Punch It" sold Tuners directly to customers through the "Punch It" website and to dealers in bulk.

116.    Mr. Schimmack told EPA investigators that "Punch It" also emailed some Tunes directly to customers.

117.    Mr. Schimmack told EPA investigators that at least some of the Tunes sold and manufactured by "Punch It" disable EGR Systems, DOC, DPF, and/or SCR Systems.

118.    Mr. Schimmack told EPA investigators that he had not performed any emissions tests for any of the Tunes manufactured by "Punch It."

119.    Mr. Schimmack provided EPA investigators with electronic files including sales records from August 2011 through July 27, 2015.

120.    The sales documented in records described in Paragraph 119 are attributable to PIP Tuning, the Punch It entity that was registered and active during the relevant timeframe.

121.    EPA investigators also inspected two light heavy duty trucks parked on the premises.

122.    The EGR System, DOC, DPF, and SCR System were physically removed from both vehicles using EGR Delete Hardware Products and Aftertreatment Delete Hardware Products. The removals were accompanied by corresponding modifications to the ECU.

123.    One of the vehicles had large custom decals advertising "Custom Tuning" and "Punch It Performance."

124.    Mr. Schimmack, through his attorney, told EPA that he performed the modifications removing the EGR System, DOC, DPF, and SCR System from both trucks.

### Notice of Violation

125.    On June 10, 2016, EPA issued a Notice of Violation ("NOV") to DNS, f/k/a PIP Tuning, alleging 8,979 violations of Section 203(a)(3)(B) of the CAA.

126.    The NOV was based on the information observed and collected at the First Inspection relating to the sale of Hardware Products and the manufacture and sale of Tunes.

127.    The NOV described the products that were the subject of these violations, listing the products by name and explaining the illegal effect on various Emission-Related Elements of Design.

128.    The NOV stated, "Persons violating Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), are subject to an injunction under Section 204 of the CAA, 42 U.S.C. § 7523, and a civil penalty of up to $3,750 for each violation."

*EPA's Second Inspection*

129.     On October 4, 2016, EPA received a second anonymous tip that Mr.

Schimmack was continuing to manufacture and sell the same (or similar) products listed

in the NOV under the brand name "Punch It" at a new site located in a strip mall, 600

Courtland Boulevard, Deltona, Florida.

130.     On November 2, 2016, EPA investigators conducted a second inspection

at 600 Courtland Boulevard, Deltona, Florida.

131.     While on the premises, EPA investigators observed through one of the

investigator's cell phones that a wireless internet signal was available called "Punch It

Performance."

132.     EPA investigators observed products that appeared ready-to-ship and an

employee conducting business operations.

133.     The employee refused to grant EPA permission to review sales records or

inspect the products.

134.     EPA investigators learned that DNS and Mr. Schimmack had been

conducting business at the strip mall location since approximately April 2016.

*Alleged Close of Business and Updated Sales Information*

135.     In a letter dated November 10, 2016, DNS informed EPA that DNS had

"reluctantly reached a decision to close its business" on or about October 25, 2016 "as a

result of the EPA's enforcement of this matter."

136.     In the same letter, DNS stated that the company was not selling products

from the facility at 600 Courtland Boulevard, Deltona, Florida location at the time of

EPA's second inspection.

137.    In the same letter, DNS stated that "no further sales will occur" and that the company would remain open only to conduct a "buy-back" of the products listed in the NOV.

138.    In a letter dated December 28, 2016, DNS repeated that "the company ceased its business operations and closed its business offices as of October 25, 2016."

139.    On December 28, 2016, DNS also provided EPA with "a spreadsheet that outlines all products sold between August 5, 2015 and October 25, 2016."

140.    There was no mention of Mr. Schimmack continuing to sell the same or similar products that were sold by DNS under another company name in either the November 10, 2016 or December 28, 2016 correspondence.

141.    DNS later provided EPA with additional sales information in its March 17, 2017 response to EPA's formal Information Request.

142.    In the same March 17, 2017 response, DNS provided descriptions of each of the products sold, responding to the Information Request's prompt to "indicate. . . whether [each] part or component replaces, modifies, bypasses, allows for deletion or partial deletion, or affects a vehicle's [Emission-Related Elements of Design]."

### Continued Business as REI

143.    As alleged in Paragraph 17, REI was registered as a corporation on November 4, 2016—ten days after DNS's alleged close of business.

144.    On February 28, 2017, EPA investigators received a third anonymous tip that Mr. Schimmack was continuing to manufacture and sell aftermarket defeat devices

through a new company, REI.

145.    EPA had previously issued an information request to "DNS Enterprises of Florida, Inc. (d/b/a Punch It Performance) ('DNS')" pursuant to Section 208(a) of the CAA, 42 U.S.C. § 7542(a), on February 15, 2017 (hereinafter, "Information Request").

146.    The Information Request described in Paragraph 145 defined "DNS" as "including, but not limited to . . . Michael Schimmack and any parent organization, affiliate, predecessor, successor, and assignee organization."

147.    In a letter dated April 19, 2017, DNS acknowledged that the Information Request described in Paragraph 145 "was intended to include 'actions by affiliates and others'" and that "REI could fall within EPA's definition of entities subject [the Information Request]," and that "REI . . . sold items that could be subject to [the Information Request]."

148.    REI continued the same business operations as DNS by selling the same products to customers of DNS.

149.    Mr. Schimmack was not a listed officer or director of REI, but he continued to manufacture and sell the same or similar products as DNS on behalf of REI.

150.    Mr. Schimmack's wife, Vanessa Schimmack—a previous officer of DNS—was listed as a director at REI.

151.    Mr. Schimmack's sister, Lori Brown, was the other officer listed on the Articles of Incorporation for REI.

### *Transfer of Assets from Punch It Entities to*
### *Mr. Schimmack, Mrs. Schimmack, and Ms. Brown*

152.    In late 2016 or early 2017, REI paid Ms. Brown $700,000.

22

153.     In January and February 2017, DNS executed a series of quitclaim deeds transferring five residential real estate assets from DNS to Mr. Schimmack, or to Mr. and Mrs. Schimmack.

154.     The recorded value of the residential real estate assets transferred to Mr. and Mrs. Schimmack total approximately $640,000.

155.     On January 24, 2017, quitclaim deeds relating to 125 Poinciana Lane, 200 Stone Island Road, 1071 W. Seagate Drive and 1456 S. Seagate Drive in Deltona, Florida, Volusia County transferred the properties from DNS to Mr. and Mrs. Schimmack as tenancies by the entirety.

156.     On February 1, 2017, a quitclaim deed for 2139 E. Parkton Drive, Deltona, Florida, Volusia Country, transferred the property from DNS to Mr. Schimmack.

157.     On April 4, 2017, a quitclaim deed for 2139 E. Parkton Drive, Deltona, Florida, Volusia Country, transferred the property from Mr. Schimmack to Mr. and Mrs. Schimmack as a tenancy by the entirety.

158.     In early 2017, DNS transferred a Yellowfin-brand yacht to Mr. Schimmack as payment for salary.

159.     The yacht was valued at $100,000 at the time of the transfer to Mr. Schimmack.

160.     On August 13, 2018, Mr. Schimmack sold the Yellowfin-brand yacht for $245,000.

*Mr. Schimmack's Role in the Punch It Entities*

161.    As alleged in Paragraph 27, Mr. Schimmack had ultimate decision-making authority at PIP Tuning.

162.    As alleged in Paragraph 28, Mr. Schimmack had ultimate decision-making authority at DNS.

163.    As alleged in Paragraph 29, Mr. Schimmack had ultimate decision-making authority at REI.

164.    At the relevant times herein, Mr. Schimmack was in a position to prevent repeated violations of the CAA and failed to do so.

165.    As alleged in Paragraph 30, Mr. Schimmack manufactured, designed, and sold certain Subject Tunes.

## V.    FIRST CLAIM FOR RELIEF
### *Violations of the CAA for the Sale of Subject EGR Delete Hardware Products*

166.    The United States re-alleges Paragraphs 1 – 165 above as fully set forth herein.

167.    During the period PIP Tuning was operating, PIP Tuning sold numerous Subject EGR Delete Hardware Products.

168.    During the period DNS was operating, DNS sold numerous Subject EGR Delete Hardware Products.

169.    The product names of certain of the Subject EGR Delete Hardware Products as listed on the "Punch It" website expressly include "EGR/Cooler Delete Kit."

170.    Third-party dealers advertised certain of the Subject EGR Delete Hardware Products as "delete kit[s] . . . that will allow you to remove the [EGR] coolers

24

off the truck."

171.    The Subject EGR Delete Hardware Products are intended for use with certified motor vehicles and motor vehicle engines, including Powerstroke engines in Ford vehicles and Duramax engines in General Motors vehicles.

172.    As alleged in Paragraph 124, Mr. Schimmack stated that he performed modifications on two trucks using EGR Delete Hardware Products.

173.    The Subject EGR Delete Hardware Products use blocker plates, replacement tubes, or other hardware to interfere with the recirculation of exhaust gas back into the engine combustion chamber, thereby defeating or rendering inoperative the vehicle's EGR System.

174.    A principal effect of each Subject EGR Delete Hardware Product is to bypass, defeat, or render inoperative a vehicle's EGR System.

175.    EGR Systems are Emission-Related Elements of Design installed on or in motor vehicles or motor vehicle engines in compliance with Title II of the CAA.

176.    PIP Tuning knew or should have known that the Subject EGR Delete Hardware Products were being offered for sale or installed for such use or put to such use.

177.    DNS knew or should have known that the Subject EGR Delete Hardware Products were being offered for sale or installed for such use or put to such use.

178.    Mr. Schimmack knew or should have known that the Subject EGR Delete Hardware Products were being offered for sale or installed for such use or put to such use.

179.     Each unit of the Subject EGR Delete Hardware Products manufactured, sold, offered for sale, or installed and intended for use with, or as a part of, any motor vehicle or motor vehicle engine (or the causing thereof) is a separate violation of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B). 42 U.S.C. § 7524(a).

180.     Unless enjoined, Mr. Schimmack and the Punch It Entities are likely to continue to manufacture, sell, offer for sale, or install the Subject EGR Delete Hardware Products.

181.     PIP Tuning, DNS, and Mr. Schimmack are each liable to the United States for injunctive relief and civil penalties of up to $3,750 for each violation of Section 203(a)(3)(B) occurring on or after January 13, 2009, through November 2, 2015, and injunctive relief and civil penalties of up to $4,735 for each violation of Section 203(a)(3)(B) occurring after November 2, 2015, and assessed on or after February 6, 2019, in accordance with Sections 204(a) and 205(a) of the CAA, 42 U.S.C. §§ 7523(a) and 7524(a). 40 C.F.R. § 19.4 (2019).

## VI.     SECOND CLAIM FOR RELIEF
### *Violations of the CAA for the Sale of*
### *Subject Aftertreatment Delete Hardware Products*

182.     The United States re-alleges Paragraphs 1 – 165 above as fully set forth herein.

183.     During the period PIP Tuning was operating, PIP Tuning sold numerous Subject Aftertreatment Delete Hardware Products.

184.     During the period DNS was operating, DNS sold numerous Subject Aftertreatment Delete Hardware Products.

185.    The product names of certain of the Subject Aftertreatment Delete Hardware Products as listed on the "Punch It" website expressly include "DPF Delete Pipe" and "No Bungs."

186.    "No Bungs" indicates that a product will override a vehicle's OBD System and/or Sensors.

187.    Third-party dealers advertised certain of the Subject Aftertreatment Delete Hardware Products as products that replace the stock Aftertreatment.

188.    The Subject Aftertreatment Delete Hardware Products are intended for use with certified motor vehicles and motor vehicle engines, including Ford vehicles, GM vehicles, and Fiat Chrysler vehicles.

189.    As alleged in Paragraph 124, Mr. Schimmack stated that he performed modifications on two trucks using Subject Aftertreatment Delete Hardware Products.

190.    The Subject Aftertreatment Delete Hardware Products are replacements for OEM-installed stock exhaust pipes which contain Emission-Related Elements of Design such as DPFs, DOCs, SCR Systems, and/or NACs.

191.    A principal effect of each Subject Aftertreatment Delete Hardware Product is to bypass, defeat, or render inoperative a vehicle's OBD System, DPFs, DOCs, SCR System, and/or NACs.

192.    OBD Systems, DPFs, DOCs, SCR Systems, and NACs are Emission-Related Elements of Design installed on or in motor vehicles or motor vehicle engines in compliance with Title II of the CAA.

193.    PIP Tuning knew or should have known that the Subject Aftertreatment

27

Delete Hardware Products were being offered for sale or installed for such use or put to such use.

194.    DNS knew or should have known that the Subject Aftertreatment Delete Hardware Products were being offered for sale or installed for such use or put to such use.

195.    Mr. Schimmack knew or should have known that the Subject Aftertreatment Delete Hardware Products were being offered for sale or installed for such use or put to such use.

196.    Each unit of the Subject Aftertreatment Delete Hardware Products manufactured, sold, offered for sale, or installed and intended for use with, or as a part of, any motor vehicle or motor vehicle engine (or the causing thereof) is a separate violation of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B). 42 U.S.C. § 7524(a). Unless enjoined, Mr. Schimmack and the Punch It Entities are likely to continue to manufacture, sell, offer for sale, or install the Subject Aftertreatment Delete Hardware Products.

197.    Unless enjoined, Mr. Schimmack and the Punch It Entities are likely to continue to manufacture, sell, offer for sale, or install the Subject Aftertreatment Delete Hardware Products.

198.    PIP Tuning, DNS, and Mr. Schimmack are each liable to the United States for injunctive relief and civil penalties of up to $3,750 for each violation of Section 203(a)(3)(B) occurring on or after January 13, 2009, through November 2, 2015, and injunctive relief and civil penalties of up to $4,735 for each violation of Section

203(a)(3)(B) occurring after November 2, 2015, and assessed on or after February 6, 2019, in accordance with Sections 204(a) and 205(a) of the CAA, 42 U.S.C. §§ 7523(a) and 7524(a). 40 C.F.R. § 19.4 (2019).

### VII.    THIRD CLAIM FOR RELIEF
#### Violations of the CAA for the Manufacture and Sale of
#### Subject Tunes, Including Delete Tunes

199.    The United States re-alleges Paragraphs 1 – 165 above as fully set forth herein.

200.    During the period PIP Tuning was operating, PIP Tuning sold numerous Subject Tunes.

201.    The majority of the Subject Tunes sold by PIP Tuning were Delete Tunes.

202.    PIP Tuning also manufactured many of these Delete Tunes.

203.    During the period DNS was operating, DNS sold numerous Subject Tunes.

204.    The majority of the Subject Tunes sold by DNS were Delete Tunes.

205.    DNS also manufactured many of these Delete Tunes.

206.    During the period REI was operating, REI sold numerous Delete Tunes.

207.    The Delete Tunes referenced in Paragraph 206 were manufactured by REI.

208.    As alleged in Paragraphs 30 and 165, Mr. Schimmack designed, manufactured, and sold certain of the Subject Tunes.

209.    Certain of the Delete Tunes manufactured and sold by Mr. Schimmack and the Punch It Entities were loaded onto Tuners manufactured by a third party.

210.    Mr. Schimmack and the Punch It Entities acquired these Tuners in their original packaging, cut a hole in the packaging to connect to the Tuners without

removing the packing, loaded certain of the Delete Tunes onto the Tuners, and then resold the Tuners as "Punch It" brand products by adding a label on the original packaging.

211.    As alleged in Paragraph 117, Mr. Schimmack stated that certain of the Subject Delete Tunes disable EGR Systems, DOCs, DPFs, and/or SCR Systems.

212.    The product descriptions and advertisements for certain of the Subject Tunes offered for sale on the "Punch It" website state that the products "work[] with competition pipes and aftermarket egr [sic] kits."

213.    Instruction manuals accompanying certain of the Subject Tunes sold by the Punch It Entities state that the customer "will need to unplug EGR connectors" and explain that once certain Delete Tunes are installed the customer may "proceed with your exhaust and/or EGR removal."

214.    Third-party dealers advertise that certain of the Subject Tunes "fully delete[] DPF and EGR" and instruct customers, "Do not leave the DPF on the vehicle if running this product!"

215.    The Subject Tunes are intended for use with certified motor vehicles and motor vehicle engines, including Ford vehicles, Powerstroke engines, GM vehicles, and Duramax engines.

216.    The Subject Tunes manipulate a vehicle's ECU and/or OBD System to modify or bypass the Certified Stock Calibrations.

217.    Delete Tunes electronically defeat or allow for the removal of Emission-Related Elements of Design, including OBD Systems, EGR Systems, DPFs, DOCs, SCR

Systems, NACs, and/or Oxygen Sensors.

218.   A principal effect of one or more component(s) of each Subject Tune is to bypass, defeat, or render inoperative a vehicle's OBD System, Certified Stock Calibrations, EGR System, DPF, DOC, SCR System, NACs, and/or Oxygen Sensors.

219.   The Elements of Design affected by the Subject Tunes, including OBD Systems, Certified Stock Calibrations, EGR Systems, DPFs, DOCs, SCR Systems, NACs, and Oxygen Sensors, are Emission-Related Elements of Design installed on or in motor vehicles or motor vehicle engines in compliance with Title II of the CAA.

220.   PIP Tuning knew or should have known that the Subject Tunes were being offered for sale or installed for such use or put to such use.

221.   DNS knew or should have known that the Subject Tunes were being offered for sale or installed for such use or put to such use.

222.   REI knew or should have known that the Subject Tunes were being offered for sale or installed for such use or put to such use.

223.   Mr. Schimmack knew or should have known that the Subject Tunes were being offered for sale or installed for such use or put to such use.

224.   Each copy of the Subject Tunes manufactured, sold, offered for sale, or installed and intended for use with, or as a part of, any motor vehicle or motor vehicle engine (or the causing thereof) is a separate violation of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B). 42 U.S.C. § 7524(a).

225.   Unless enjoined, Mr. Schimmack and the Punch It Entities are likely to continue to manufacture, sell, offer for sale, or install the Subject Tunes.

226.    PIP Tuning, DNS, REI, and Mr. Schimmack are each liable to the United States for injunctive relief and civil penalties of up to $3,750 for each violation of Section 203(a)(3)(B) occurring on or after January 13, 2009, through November 2, 2015, and injunctive relief and civil penalties of up to $4,735 for each violation of Section 203(a)(3)(B) occurring after November 2, 2015, and assessed on or after February 6, 2019, in accordance with Sections 204(a) and 205(a) of the CAA, 42 U.S.C. §§ 7523(a) and 7524(a). 40 C.F.R. § 19.4 (2019).

## VIII.    FOURTH CLAIM FOR RELIEF
### Fraudulent Transfer under Section 3304 of the FDCPA
### from REI to Ms. Brown

227.    The United States re-alleges Paragraphs 1 – 165 above as fully set forth herein.

228.    The United States has a "claim" for civil penalties under the CAA against REI within the meaning of 28 U.S.C. § 3301(3) (defining a "claim" as a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured").

229.    The United States is a "creditor" within the meaning of 28 U.S.C. § 3301(4).

230.    The United States' claim to recover civil penalties from REI is a "debt" within the meaning of 28 U.S.C. § 3002(3)(B) (defining "debt" to include a penalty or fine).

231.    REI is a "debtor" to the United States within the meaning of 28 U.S.C.

§ 3002(4).

232.     EPA issued a NOV to DNS on June 10, 2016, alleging 8,979 violations of the CAA, as alleged in Paragraph 125.

233.     The NOV put Mr. Schimmack and his related corporate entities on notice of the potential penalties for these CAA violations by including the maximum penalty that could be assessed under the statute ($3,750 per product), as alleged in Paragraph 128.

234.     Counsel for DNS reported to EPA that DNS closed its business on October 25, 2016 as alleged in Paragraph 135 and 138.

235.     REI was registered as a corporation ten days after DNS's alleged close of business, as alleged in Paragraph 143.

236.     REI sold the same products and devices and provided the same services as DNS.

237.     REI sold the above-mentioned products and devices to former customers of DNS.

238.     At least some of the services and devices sold by REI were the subject of the 2016 NOV.

239.     Defendant Michael Schimmack continued to manufacture and sell products on behalf of REI.

240.     REI's debt to the United States arose when it violated Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), by manufacturing and/or selling Subject Tunes, including Delete Tunes.

241.     Mr. Schimmack closed REI in early 2017, as alleged in Paragraph 19,

after it had been open for approximately three months.

242.    REI paid $700,000 to Ms. Brown, as alleged in Paragraph 152.

243.    The $700,000 payment was a "transfer" within the meaning of 28 U.S.C. § 3301(6).

244.    Although Ms. Brown was named a director of REI, Ms. Brown had no knowledge of REI's business operations and the automotive software industry, as alleged in Paragraphs 38 and 39.

245.    Ms. Brown did not provide services reasonably equivalent to the value of $700,000.

246.    Ms. Brown is an "insider" within the meaning of 28 U.S.C. § 3301(5)(B).

247.    The $700,000 transferred to Ms. Brown was all or substantially all of REI's remaining assets at the time of transfer.

248.    REI became "insolvent" within the meaning of 28 U.S.C. § 3302, because it transferred $700,000 to Ms. Brown.

249.    REI believed or had reason to believe at the time of the transfer that it would incur debt—at a minimum, debt connected to the CAA violations resulting from the manufacture and sale of the products that were the same or similar to those that were the subject of EPA's June 2016 NOV—beyond its ability to pay.

250.    Mr. Schimmack and REI attempted to hinder the United States' collection of the debt by creating REI to sell the same or similar products as DNS and then transferring REI's remaining assets to Ms. Brown before the United States could enforce its CAA claims.

251.    Ms. Brown is a transferee against whom the United States may recover judgment under the FDCPA, 28 U.S.C. § 3307(b).

## IX.    FIFTH CLAIM FOR RELIEF
### *Fraudulent Transfer under Section 3304 of the FDCPA from DNS to Mr. and Mrs. Schimmack*

252.    The United States re-alleges Paragraphs 1 – 165 above as fully set forth herein.

253.    The United States has a "claim" for civil penalties under the CAA against DNS within the meaning of 28 U.S.C. § 3301(3) (defining a "claim" as a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured").

254.    The United States is a "creditor" within the meaning of 28 U.S.C. § 3301(4).

255.    The United States' claim to recover civil penalties from DNS is a "debt" within the meaning of 28 U.S.C. § 3002(3)(B) (defining "debt" to include a penalty or fine).

256.    DNS is a "debtor" to the United States within the meaning of 28 U.S.C. § 3002(4).

257.    EPA issued a NOV to DNS on June 10, 2016, alleging 8,979 violations of the CAA, as alleged in Paragraph 125.

258.    The NOV put Mr. Schimmack and his related corporate entities on notice of the potential penalties for these CAA violations by including the maximum penalty

that could be assessed under the statute ($3,750 per product), as alleged in Paragraph 128.

259.    DNS's debt to the United States arose when DNS violated Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), by manufacturing and/or selling Subject EGR Delete Hardware Products, Subject Aftertreatment Delete Hardware Products, and Subject Tunes, including Delete Tunes.

260.    Between January 24, 2017 and February 1, 2017, DNS transferred four residential properties to Mr. and Mrs. Schimmack as tenancies by the entirety via quitclaim deed, as alleged in Paragraph 155.

261.    On February 1, 2017, a quitclaim deed for 2139 E. Parkton Drive, Deltona, Florida, Volusia Country, transferred the property from DNS to Mr. Schimmack, as alleged in Paragraph 156.

262.    On April 4, 2017, Mr. Schimmack transferred the 2139 E. Parkton Drive, Deltona, Florida property via quitclaim deed to Mr. and Mrs. Schimmack as tenancy by the entirety, as alleged in Paragraph 157.

263.    The transferred properties referred to above in Paragraphs 260 – 262 were valued at approximately $640,000 in total as recorded in the quitclaim deeds, as alleged in Paragraph 154.

264.    A Yellowfin yacht was also transferred to Mr. Schimmack from DNS in early 2017, as alleged in Paragraph 158.

265.    The yacht was valued at $100,000 at the time of transfer, as alleged in Paragraph 159.

266.    Mr. Schimmack is an "insider" within the meaning of 28 U.S.C.

§ 3301(5)(B).

267.    Mrs. Schimmack is an "insider" within the meaning of 28 U.S.C.
§ 3301(5)(B).

268.    As the President of DNS, Mr. Schimmack had possession of the
residential real estate assets referenced above in Paragraphs 260 – 263 when they were
owned by DNS.

269.    Mr. Schimmack retained possession of the residential real estate assets
referenced above in Paragraphs 260 – 263 after they were transferred from DNS to
himself and Mrs. Schimmack.

270.    As the President of DNS, Mr. Schimmack had possession of the yacht
referenced above in Paragraph 264 when it was owned by DNS.

271.    Mr. Schimmack retained possession of the yacht referenced above in
Paragraph 264 after the yacht was transferred from DNS to himself.

272.    The five residential real estate assets and the yacht transferred to either
Mr. Schimmack, or to Mr. and Mrs. Schimmack were all or substantially all of DNS's
assets at the time of transfer.

273.    DNS became "insolvent" within the meaning of 28 U.S.C. § 3302,
because it transferred the real estate assets and yacht to either Mr. Schimmack, or to Mr.
and Mrs. Schimmack.

274.    Mr. Schimmack, Mrs. Schimmack, and DNS attempted to hinder the
United States' collection of its debt by transferring these properties as tenancy by the
entirety with the intent to protect these assets from judgement.

275.    Mr. Schimmack and Mrs. Schimmack are transferees against whom the United States may recover judgment under the FDCPA, 28 U.S.C. § 3307(b).

## **RELIEF REQUESTED**

WHEREFORE, the United States respectfully requests that this Court:

A.    Assess civil penalties against Mr. Schimmack for his numerous violations of Section of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), in the amount of up to $3,750 for each violation occurring after November 1, 2013 through November 2, 2015, and up to $4,735 for each violation occurring after November 2, 2015;

B.    Assess civil penalties against PIP Tuning for its numerous violations of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), in the amount of up to $3,750 for each violation occurring after November 1, 2013 through November 2, 2015, and up to $4,735 for each violation occurring after November 2, 2015;

C.    Assess civil penalties against DNS for its numerous violations of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), in the amount of up to $3,750 for each violation occurring after November 1, 2013 through November 2, 2015, and up to $4,735 for each violation occurring after November 2, 2015;

D.    Assess civil penalties against REI for its numerous violations of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), in the amount of up to $3,750 for each violation occurring after November 1, 2013 through November 2, 2015, and up to $4,735 for each violation occurring after November 2, 2015;

E.    Permanently enjoin Mr. Schimmack, PIP Tuning, DNS, and REI from manufacturing, selling, offering to sell, or installing motor vehicle parts or components

intended for use with a motor vehicle or motor vehicle engine where a principal effect of

such part or component is to bypass, defeat, or render inoperative any device or element

of design installed on or in a motor vehicle or motor vehicle engine in compliance with

Title II of the CAA;

F.      Order Mr. Schimmack, PIP Tuning, DNS, and REI to take other

appropriate actions to remedy, mitigate, and offset the harm caused by their alleged CAA

violations;

G.      Enter judgment pursuant to 28 U.S.C. §§ 3306(a) and 3307(b) in favor of

the United States against REI and Ms. Brown, ordering Ms. Brown to pay the United

States up to $700,000, to the extent necessary to satisfy Mr. Schimmack's and REI's debt

under the FDCPA;

H.      Enter judgment pursuant to 28 U.S.C. §§ 3306(a) and 3307(b) in favor of

the United States against DNS, Mr. Schimmack, and Mrs. Schimmack, ordering Mr. and

Mrs. Schimmack to pay the United States the value of the residential properties and the

yacht, to the extent necessary to satisfy Mr. Schimmack's and DNS's debt under the

FDCPA;

I.      Award the United States its costs and disbursements in this action; and

J.      Award such other and further relief as the Court may deem just and

proper.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources
Division

*/s/ R. Shea Diaz*

R. SHEA DIAZ
Trial Attorney (D.C. Bar # 1500278)
Environmental Enforcement Section
PATRICIA MCKENNA
Counselor (D.C. Bar # 453903)
Environment and Natural Resources
Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington D.C. 20044-7611
(202) 514-3211
rebecca.diaz@usdoj.gov
(202) 616-6517
patricia.mckenna@usdoj.gov


MARIA CHAPA LOPEZ
United States Attorney
Middle District of Florida

JEREMY R. BLOOR
Assistant U.S. Attorney
Florida Bar No. 0071497
Office of the United States Attorney
Middle District of Florida
400 West Washington St.
Suite 3100
Orlando, FL 32801
Tele. (407) 648-7500
Fax (407) 648-7588
Jeremy.Bloor@usdoj.gov


Of counsel:
LAUREN TOZZI
Attorney-Advisor
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, D.C. 20460

JS 44   (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Punch It Performance and Tuning LLC, D N S Enterprises of Florida, Inc., REI Research Group, Inc., Michael Paul Schimmack, Vanessa Schimmack, and Lori Brown |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Volusia**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
R. Shea Diaz, Patricia McKenna
Environment and Natural Resources Division, U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611     Tel  202-514-3211

Attorneys *(If Known)*
For Punch It Performance LLC,
D N S Enterprises of Florida, Inc.,
REI Research Group, Inc.,
Michael Paul Schimmack, and Vanessa Schimmack

Michael Cooke, David Weinstein
Greenberg Traurig
101 East Kennedy Blvd., Ste. 1900
Tampa, FL 33602

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question *(U.S. Government Not a Party)*
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                  *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | **PERSONAL INJURY** | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 365 Personal Injury - Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | **LABOR** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 751 Family and Medical Leave Act | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☒ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | |
| | | ☐ 550 Civil Rights | **IMMIGRATION** | |
| | | ☐ 555 Prison Condition | ☐ 462 Naturalization Application | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 7524 and 28 U.S.C. § 3301 et seq.
Brief description of cause:
Violations of defeat device prohibition in Title II of the Clean Air Act; Fraudulent transfers under FDCPA.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____
DOCKET NUMBER _____

DATE
06/14/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| <br><br><br><br>_____<br>*Plaintiff(s)*<br>v.<br><br><br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| _____ | ) ) ) ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| | ) ) ) | |
| _____ | ) ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| _____ | ) ) ) ) ) | |
| *Plaintiff(s)* | ) | Civil Action No. |
| v. | ) ) ) | |
| _____ | ) ) ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                    *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Plaintiff(s)* | ) | Civil Action No. |
| v. | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Defendant(s)* | ) |  |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                  *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

<table>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>_____</td><td>)</td><td></td></tr>
<tr><td>*Plaintiff(s)*</td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>Civil Action No.</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>_____</td><td>)</td><td></td></tr>
<tr><td>*Defendant(s)*</td><td>)</td><td></td></tr>
</table>

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Plaintiff(s)* | ) |  |
| v. | ) | Civil Action No. |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Defendant(s)* | ) |  |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                          *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: